Garni, J.
(concurring in part and dissenting in part, and vot-
ing to reverse the Supreme Court’s order and grant the motion of the third-party defendant American Safety Indemnity Company for summary judgment dismissing the third-party complaint insofar as asserted against it, and grant the motion of the third-party defendant Bilus Brokerage, Inc., for summary judgment dismissing the third-party complaint and cross claims insofar as asserted against it, with the following memorandum): I agree with the majority’s conclusion that the coverage afforded by the commercial general liability policy at issue includes the sidewalk section where the plaintiff tripped and fell. Thereafter, insofar as ASIC’s motion for summary judgment is concerned, I respectfully dissent.
It is well settled that such policies extend to sidewalks incidental to and necessarily used for access to the premises (see ZKZ Assoc. v CNA Ins. Co., 89 NY2d 990 [1997]). Indeed, it is this well-settled rule that provides the basis for the insurer to evaluate the risk associated with issuing such a policy covering a particular location (see ZKZ Assoc. v CNA Ins. Co., 89 NY2d at 991).
As part of that risk analysis, Ocpard made a warranty to ASIC concerning the condition of the insured premises “including but not limited to all buildings, structures and parking lots.” This warranty allowed ASIC to accurately evaluate and rate, using the majority’s language, the insured’s “liability profile.”
The policy was issued for the period of June 20, 2003 to June 20, 2004. There is no dispute that on June 3, 2003 the New York City Department of Transportation issued a notice of violation to Ocpard which recited that Ocpard’s property was in violation of section 2904 of the New York City Charter and section 19-152 of the Administrative Code of the City of New York, which require property owners to maintain the sidewalks adjacent to their property. The notice of violation identified the existence of, inter alia, a “trip hazard” and other defects in the sidewalk section at issue. The plaintiff allegedly tripped and fell on this sidewalk section on April 15, 2004. There is no dispute that Ocpard was aware of the notice of code violations, the accuracy of which it does not dispute, for over 10 months prior to the plaintiffs fall.
*587 At the inception of the policy, Ocpard made two categories of warranty concerning the condition of the property to the effect that the “insured premises” were in compliance with all (1) “federal, national, state and local codes,” and (2) “requirements as respects fire, life safety (including, but not limited to: National Fire Protection Association Life Safety Code Standard 101), building construction and building maintenance.” The policy also provided that if the insured failed to comply with any of the representations and warranties “at any time during the ‘policy period,’ ” then the named insured shall be deemed in breach of the policy.
In my view, Administrative Code § 19-152, entitled “Duties and obligations of property owner with respect to sidewalks and lots,” expressly applies to Ocpard as the abutting property owner. That provision defines a substantial defect in a sidewalk as including, inter alia, trip hazard, loose sidewalk flag, cracked sidewalk flag and improper slope—all defects which the insured does not dispute existed in the sidewalk at the time of the plaintiffs trip and fall. Under the code, the owner of the property fronting or abutting the sidewalk—here Ocpard—is required to repair the defect within 45 days of notice thereof (see Administrative Code § 19-152 [c]).
There is no dispute that Ocpard did not repair the defect and the sidewalk remained in continuous violation of the code up to and including the date of the plaintiffs trip and fall. I do not find anything ambiguous about the policy’s language concerning Ocpard’s continuous obligation to comply with this local code provision insofar as Ocpard simultaneously seeks liability coverage for bodily injury arising from the very same sidewalk.
Lastly, and perhaps most fundamentally, accepting as we must that the policy includes the sidewalk within the “premises” for the purpose of requiring coverage, I cannot find at the same time that the warranty’s more expansive and inclusively descriptive language that the “insured premises, including but not limited to all buildings, structures, and parking lots,” were in compliance with local codes did not include the very same sidewalk. While the term “premises” for purposes of coverage is undefined, the warranty language is more expansive and inclusive of the sidewalk at issue because it contains the language “including but not limited to, all buildings and structures.” In other words, if we are to include the sidewalk within the singular word “premises,” surely the same sidewalk must be included in the all-encompassing phrase “insured premises including but not limited to all buildings, structures and parking lots.” I submit that we should read and apply the *588 policy in a uniform and consistent manner and I cannot reconcile the conclusion that the “premises” includes the sidewalk for coverage purposes but does not include the same sidewalk within Ocpard’s warranty concerning the condition of the very same “insured premises.” The majority’s inconsistent reading of the policy is, in my mind, not a fair interpretation. I find it unreasonable for a business person, in reliance upon the word “premises,” to expect and believe that he has liability coverage for bodily injury occurring on a defective abutting City sidewalk and at the same time believe that his warranty that the “insured premises, including but not limited to all buildings, structures and parking lots” are code compliant does not include the very same sidewalk.
Accordingly, I respectfully dissent in part.